UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| GARRY BASS, ) | |
| ) | |
| Plaintiff, ) | 1:07-cv-00014-JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| MICHAEL J. ASTRUE, ) | [Re: Motion at Docket 32] |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I. MOTION PRESENTED

Plaintiff Garry Bass ("Bass"), having exhausted his administrative remedies, filed a Social Security complaint in this court alleging the final decision of the Social Security Commissioner was not supported by substantial evidence and/or was erroneous as a matter of law and regulation. At docket 32, Bass requests remand for payment of benefits. At docket 34, defendant Commissioner ("defendant" or "Commissioner") responds. Bass did not reply. Oral argument was not requested, and it would not assist the court.

## II. BACKGROUND

This dispute arises from defendant's denial of Bass's application for disability benefits. Bass is a 43-year-old man with an 11th grade education and a "general

equivalency degree."[1]  His past work experience includes employment as a shuttle driver, plumber's helper, forklift operator, pest control worker, handyman, and carpenter."[2]  Bass claims to have become disabled on February 25, 2000, due to foot, back, and mental conditions.[3]  His first claim for benefits, filed on March 17, 2000, was denied on August 16, 2002, and upheld by the Appeals Council.[4]  Plaintiff did not appeal to the district court, but filed a new application for benefits in September 2002.  In a decision dated September 21, 2005, the administrative law judge ("ALJ") determined that Bass satisfied the criteria for steps one, two, and four: he has not engaged in substantial gainful activity since the onset of disability,[5] he suffers from "severe" impairment,[6] and is not capable of performing his past relevant work.[7]

At step five, the ALJ found that, given Bass's vocational factors and residual function capacity ("RFC"), there are significant numbers of sedentary jobs in the national economy that he could perform, such as hand stuffer (3,105 jobs nationally), table worker (14,083 jobs nationally), and assembler (56,987 jobs nationally).[8]  The ALJ found that Bass's contention that he needed to lie down most of each workday was not consistent with the medical records and that his testimony lacked credibility.[9]  At issue is whether the ALJ's adverse credibility determination and step five finding that Bass can

---

[1] Administrative Record ("AR") at 31.

[2] *Id.*

[3] *Id.*

[4] *See* Docket 1.

[5] AR at 39, Finding 2.

[6] AR at 40, Finding 3.  The ALJ determined under step three that Bass's impairments do not meet or medically equal any listed impairments in Appendix 1, Subpart P, Regulation No. 4.  AR 40, Finding 4.

[7] AR at 40, Finding 7.

[8] AR at 40, Finding 12.

[9] AR at 36.

-2-

perform other substantial gainful work was supported by substantial evidence and whether the ALJ applied the correct legal standard.[10]

### III. STANDARD OF REVIEW

The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] A claimant is not disabled if he or she can engage "in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."[12]

Disability claims are evaluated using a five-step sequential analysis.[13] At step one, the ALJ determines whether the claimant is "working and the work [is] substantial gainful activity."[14] If the claimant is doing substantial gainful activity, the claimant is not disabled, regardless of medical condition, age, education or work experience.[15] At step two, the ALJ assesses the severity of the claimant's impairment or combination of impairments - that is, whether the impairment or combination of impairments significantly limits basic work activities.[16] If those impairments do not so limit claimant's ability to work, the claimant is not disabled. At step three, the ALJ considers whether

---

[10] The remainder of the procedural history is set out in this court's order at docket 31 and will not be repeated here.

[11] 42 U.S.C. § 423(d)(1)(A).

[12] *Id.* § 423(d)(2)(A).

[13] 20 C.F.R. § 404.1520(a)(4); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

[14] 20 C.F.R. § 404.1520(b).

[15] *See id.*

[16] *See id.* § 404.1520(c).

the claimant's impairment or combinations of impairments meets or equals an impairment listed in an appendix to the regulations.[17] At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing work he has performed in the past fifteen years.[18]

At step five, the ALJ assesses the claimant's RFC, "together with vocational factors . . . to determine if [the claimant] can make an adjustment to other work."[19] If the claimant can make an adjustment to other work, the ALJ will conclude that he is not disabled. "The claimant carries the initial burden of proving a disability in steps one through four of the analysis."[20] If the claimant establishes the inability to perform past relevant work, the burden then shifts to the ALJ to "show that the claimant can perform other substantial gainful work."[21] In making this assessment, the ALJ considers the claimant's RFC, age, education, and work experience, as well as whether alternative jobs exist in the national economy in significant numbers, either in the region in which claimant resides or in several regions in the country.[22]

Upon denial of disability benefits, a claimant may request the Social Security Administration Appeals Council to review the ALJ's decision.[23] Where, as here, the Appeals Council denies a request for review, the decision of the ALJ represents the final decision of the Commissioner.[24] The claimant may then seek judicial review of the

---

[17] *See id.* § 404.1520(d) and 20 C.F.R. pt. 404, subpt. P, App. 1

[18] 20 C.F.R. § 404.1520(e).

[19] *Id.* § 404.1520(g).

[20] *Burch*, 400 F.3d at 679.

[21] *Id.*

[22] 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

[23] 20 C.F.R. § 404.967.

[24] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981).

ALJ's decision by the district court.[25] On *de novo* review, the district court may enter, upon pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without remanding the case for a rehearing.[26] The ALJ's decision must be upheld if it is supported by substantial evidence and the ALJ applied the correct legal standards.[27] "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[28]

## IV. DISCUSSION

Bass claims that the ALJ's step five determination was not supported by substantial evidence because the ALJ ignored an element of Bass's RFC - namely that Bass needs to "lie down 50 to 75 percent of the day." Bass argues that the ALJ determined in step four that Bass needed to lie down for much of the day and must carry that determination over to step five.[29] The Commissioner disputes Bass's contention, arguing that "[t]he ALJ was simply acknowledging that Plaintiff claimed to have a need to lie down, not that he actually did have the need to lie down."[30] The Commissioner further argues that the ALJ determined that Bass's claimed need to lie down intermittently was not credible and "not consistent with the medical records or with the opinion of his primary care providers."[31] Although Bass does not formally challenge the ALJ's credibility determination, his challenge of the ALJ's step five determination - that the ALJ failed to consider his subjective symptom testimony - is functionally the same.

---

[25] 42 U.S.C. § 405(g).

[26] *Id.*

[27] *Howard v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2001).

[28] *Id.* (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] Docket 32 at 4.

[30] Docket 34 at 6.

[31] *Id.*

-5-

In order to find a claimant's testimony regarding his pain and symptoms unreliable, "the ALJ was required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"[32] "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.

First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"[33] "The claimant . . . 'need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'"[34] The ALJ should not reject subjective symptom testimony simply because the claimant cannot make a showing that his impairment cannot reasonably produce the *degree* of the symptom alleged.[35]

"Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering clear and convincing reasons for doing so.'"[36] Great weight

---

[32] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

[33] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

[34] *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1991)).

[35] *See Lingenfelter*, 504 F.3d at 1036 (quotation and citation omitted); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[t]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")

[36] *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).

-6-

should be given to the ALJ's credibility determinations because the ALJ is the only person to come face to face with live witnesses.[37]

**A. Objective Medical Evidence**

The medical records show that Bass has actively been seeking medical benefits for nearly nine years. During this period, Bass has been almost entirely focused on treating his impairments chemically, rather than physically. His visits to doctors and clinics have been frequent, and generally center around his need for pain medication.[38] Despite some conflicts among Bass's doctors regarding the extent of his impairment,[39] the ALJ adopted the evaluation of a doctor from Bass's primary care treating source,[40] La Clinica Del Valle, concluding that "[t]he claimant retains the residual functional capacity to occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to 2 hours in an 8 hour workday; and, sit up to 6 hours in an 8 hour workday with a sit/stand option."[41] Having made a favorable finding in terms of Bass's limitations,[42] the ALJ concluded under step four that "all of the claimant's past relevant work is beyond his current residual functional capacity limiting him to sedentary work."[43] Some of Bass's medical history, however, indicates that Bass is more functional than even the ALJ's RFC determination would suggest.

---

[37] *See* 1 Social Security Claims and Procedures § 8:109 (5th ed. 1998 & Supp. 2008).

[38] *See, e.g.*, AR at 300-324 (cataloging Bass's visits to La Clinica del Valle between March 2003-March 2004).

[39] AR at 36.

[40] See 20 C.F.R. § 404.1527(d)(2) (reciting treating physician rule).

[41] AR at 36-37 (citing 20 C.F.R. §§ 404.1527 and 416.927).

[42] Bass's other doctors did not believe Bass's limitations were as great. For example, Dr. Evelyn Phillips assessed Bass as retaining the capacity to occasionally list and/or carry 50 pounds; frequently lift and/or carry 20 pounds; stand and/or walk about 6 hours in an 8-hour workday, with normal breaks; and sit, with no restrictions in an 8-hour workday." AR at 36 (citing AR at 217).

[43] AR at 38.

In May 2003, Bass declined to have surgery on his back, claiming that he was "not particularly interested in surgery but is actively seeking disability benefits."[44] Although apparently unmoved by the prospect of a more permanent solution to his back problems, Bass continued to improve his condition through successful pain and depression management and increased physical activity. After one visit to the clinic in early August 2003, Dr. Robert Nouhan remarked that "[t]he patient has been feeling better overall as far as his mood is concerned . . . [h]e feels that he has been more productive in his life lately. He goes for walks and rides his bike. He is trying to do some low-level commercial mushroom farming . . . he tries to stay busy with these pursuits or with things he likes to do for fun like fishing."[45] For a period of time, therefore, Bass appears to have been able to control his pain and depression by participating in more conservative treatment methods.

As the ALJ noted in her decision, Bass's efforts to improve his overall health gave way to his desire to treat his pain with narcotics and led to erratic behavior. There are many such examples. First, Bass visited or phoned La Clinica del Valle nearly 20 times between August 2003 and March 2004 seeking additional medication and threatening suicide.[46] Bass was also accused by one doctor of lying about his use of methadone and providing inconsistent stories regarding his use.[47] At one point, Bass entered the clinic wielding a weapon and was escorted off the premises.[48] Although Bass's increasingly erratic behavior might be attributed to additional pain or a worsening of his condition, a contemporaneous MRI revealed no change in Bass's physical condition.[49] Nevertheless, the objective medical evidence shows that, while Bass was

---

[44]AR at 262.

[45]AR at 309.

[46]*See id.*

[47]*See* AR at 467.

[48]AR at 301.

[49]AR at 327.

able to manage his pain and alleviate his symptoms at times, Bass's underlying impairment "could reasonably be expected to produce the pain or other symptoms alleged." Under Ninth Circuit law, the ALJ could not have concluded otherwise.[50] The next question is whether, in the absence of evidence of malingering, the ALJ provided clear and convincing reasons for rejecting Bass's testimony regarding his symptoms.

**B. Adverse Credibility Determination**

In refusing to credit Bass's subjective symptom testimony, the ALJ commented on the inconsistency between Bass's testimony and the medical records as well as Bass's general credibility, concluding that Bass's testimony was inconsistent with the medical evidence:

> [t]he claimant alleged he needs to lie down most of the time due to his chronic pain, and estimated that he is able to walk and/or stand up to 20 minutes, sit for 30 minutes, and is only able to lift less than 10 pounds. These restrictions are not consistent with the medical testimony or with the opinions of his primary care providers. Specifically, at least two of the claimant's treating sources assessed his impairment-related functional limitations as being significantly less severe. . . . I have also considered the claimant's allegations and found that he is not entirely credible. Although he has physical findings to support a sedentary capacity assessment, at the hearing he presented with exaggerated sighing and overt pain behavior. He was also very well groomed and dressed in expensive looking clothing that he allegedly obtained through Goodwill industries. His hygiene was also excellent and he appeared alert and able to full[y] participate in the hearing. The record also amply demonstrates the claimant's constant focus on obtaining disability benefits, and refusal or failure to consider other treatment options, such as surgery or physical therapy.[51]

The ALJ also relied on Bass's "narcotic-seeking behavior and many changing stories," as well as his erratic behavior, in refusing to credit his testimony.[52] This court believes the ALJ's assessment of the claimant's testimony amounts to a determination that Bass is malingering, although the ALJ did not use the term. Given these

---

[50] *See Lingenfelter*, 504 F.3d at 1036; *Reddick*, 157 F.3d at 722.

[51] AR at 36-37.

[52] AR at 37.

Case 1:07-cv-00014-JWS   Document 35   Filed 10/15/08   Page 9 of 12

conclusions - that Bass was primarily motivated by the prospect of disability benefits, that he engaged in drug-seeking behavior, and that he was dishonest about his medication - the ALJ did not need to provide clear and convincing evidence to discredit Bass's subjective testimony. These factors may form the basis for discrediting Bass's testimony.[53] The ALJ was therefore justified in concluding that Bass's malingering supported an adverse credibility determination.

Regardless of Bass's malingering, the medical records themselves provide clear and convincing evidence that Bass is in better shape than he claims, that his need to lie down much of the day is exaggerated, and that many of his immediate problems might be resolved by lowering his intake of pain medication and getting more exercise, as evidenced by his improvement under these conditions in August 2003, discussed above. Bass's ability to engage in activities - like biking, fishing, and commercial mushroom farming - is inconsistent with his symptom testimony at the hearing.[54] Dr. Alejandro Rey noted in June 2004 that "[Bass] was able to walk to the clinic today and he walked less than a mile. He said that along the way to the clinic he started to have numbness on his lower extremity and paresthesias of his lower extremities. He is sitting in the chair, his body is leaning forward. He is able to incorporate from the chair and go to the examination table for examination without difficulty."[55]

The ALJ permissibly inferred that Bass's symptoms were not as all-disabling as he reported in light of the above evidence as well as evidence that Bass refused treatment methods beyond pain medication, like surgery and physical therapy. Proof that more conservative treatments - like those prescribed by Dr. Nouhan in August 2003 - improved a claimant's health is sufficient to discount a claimant's testimony regarding

---

[53] *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (affirming adverse credibility determination based in part on the appearance of claimant and documented motivation to obtain social security benefits).

[54] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (rejecting claimant's testimony where it is inconsistent with medical records and daily activities).

[55] AR at 380.

the severity of an impairment.[56] Therefore, even without any evidence of malingering, this court finds the ALJ's reasons for discrediting Bass's testimony clear and convincing. The question remains whether the ALJ nevertheless had substantial evidence to support her step five assessment.

**C. Step Five Determination**

Bass's main argument is that the ALJ failed to account for Bass's testimony regarding his limitations when questioning the vocational expert and making her step five determination. This argument is simply an indirect challenge to the ALJ's credibility determination. At step five, the ALJ referred to the testimony of the vocational expert in determining whether other jobs exist in the national economy for a person of Bass's RFC. Because the ALJ excluded any testimony from Bass regarding his alleged need to lie down based on the her adverse credibility determination, the ALJ did not have any reason to pose a hypothetical to the vocational expert that accounted for Bass's claimed need to lie down much of the workday.[57] Although the ALJ claims that the vocational expert assumed "the hypothetical individual's _specific_ work restrictions,"[58] those specific work restrictions did not include the limitations to which Bass testified. As discussed above, the ALJ properly refused to consider Bass's testimony because of Bass's malingering and the inconsistency between his claims and the medical evidence. The ALJ's step five determination was therefore based on substantial evidence and not erroneous as a matter of law.

---

[56] _See Parra v. Astrue_, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing _Johnson v. Shalala_, 60 F.3d 1428, 1434 (9th Cir.1995)).

[57] Bass's attorney, on the other hand, asked the vocational expert questions based on Bass's discredited symptom testimony, and the vocational expert testified that, if Bass's statements regarding his need to lie down were taken as true, the job numbers listed by the vocational expert would be eliminated. _See_ AR at 548. The vocational expert's testimony may also be discredited because it was based on discredited testimony.

[58] AR at 39 (emphasis added).

## V. CONCLUSION

For the reasons set out above, Bass's motion for remand for payment of benefits is **DENIED**. The clerk of court is directed to enter judgment affirming the ALJ's decision.

DATED at Anchorage, Alaska, this 15th day of October 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE